## DUFFEY v. SCIENTIFIC AMERICAN COMPILING DEPARTMENT.

No. 1420. Opinion Filed January 16, 1912.

(120 Pac. 1088.)

1. **EVIDENCE—Parol Evidence—Conditions Precedent to Obligation.** Where a person gave an order for the purchase of certain books, in which all the terms of the purchase were set out, and which in terms directed that the books be shipped, parol evidence is not admissible to show that a contemporaneous oral agreement was made with the agent of the book company that the order was not to become effective until the person giving the order wrote the publisher specific instructions to ship the books, and that if the person ordering the books at no time desired to accept them the order should have no force and effect.

2. **SAME—Parol Evidence—Ambiguous Contract.** The fact that the word "future" was written in ink across the face of the order was not such latent ambiguity as would permit the introduction of parol testimony inconsistent with the terms of the order.

.3.　　**APPEAL AND ERROR**—Theory of Case—Change on Appeal.
Where a defendant relies upon a certain defense in the trial court,
he will not be permitted to shift his ground of defense on appeal,
so as to present another defense, not presented nor relied upon in
the trial court.

(Syllabus by Rosser, C.)

*Error from Tulsa County Court; N. J. Gubser, Judge.*

Action by the Scientific American Compiling Department,
:a corporation, against J. E. Duffey. Judgment for plaintiff, and
.defendant brings error. Affirmed.

*Chas. W. Grimes,* for plaintiff in error.

*Aby & Tucker,* for defendant in error.

Opinion by ROSSER, C. The defendant in error, herein-
:after called plaintiff, was the publisher of a set of books, known
-as "the Americana." The plaintiff in error, hereinafter called
·defendant, on the 17th day of July, 1908, ordered a set of this
-work from the plaintiff; the order being in the following form:

"July 17th, 1908.

"Gentlemen: Please ship to me, one complete set of The
Americana, in sixteen (16) volumes, bound in three-quarter Mor-
·occo, which I agree to accept and for value received, pay you
at Chicago, Ill., $6.50 per volume. Title and ownership in said
books not to pass to me until full amount of contract is paid.
This order is unconditional, except as noted hereon. Payable
one vol. a month. Check payable to Scientific American com-
piling department. Received on account ———. M. V. Power,
Representative. Name, J. E. Duffey. Business or profession,
———. Mailing address, Western Supply Co. Ship books to
Tulsa. City, ———.. State, ———. It is understood by me that
'The Americana' is a general reference work, and that delin-
quency in six months payments shall cause full amount of con-.
tract to become due and payable."

This contract was made upon a printed form, and across the
face of it was written, in ink, the word "future." On the 1st of
October, 1908, plaintiff tendered the books to the defendant,
and he refused to receive them, whereupon the plaintiff sued
him for $104, the purchase price.

The defendant answered with a general denial of the contract, and of the indebtedness, admitting the tender of the books, and then answered further as follows:

"Defendant, further answering plaintiff's bill of particulars, alleges that he did, on or about the 17th day of July, 1908, enter into an agreement in writing with said plaintiff corporation for the sale of a certain set of books consisting of 16 volumes, but that said agreement was a conditional agreement, and that the same was to have no valid binding effect until said corporation plaintiff should correspond with said defendant, and should receive specific instructions from said defendant to ship said books; that said plaintiff never corresponded with said defendant, and wholly disregarding said conditional agreement shipped said books to said defendant without his consent or request. Defendant further alleges that it was expressly agreed by and between said plaintiff and defendant that, in case said defendant should at no time desire to accept said books, then said agreement above mentioned should have no force and effect, but should be null and void; and that this agreement was signed under such express conditions."

Defendant at the trial offered himself as a witness, for the purpose of proving the allegations in the answer. The plaintiff objected to his testimony, for the reason that he sought to vary the terms of a written agreement by parol testimony. The court sustained the objection, and, the defendant offering no further evidence, the court, over the objection of the defendant, instructed the jury to find for the plaintiff for the full amount of the purchase price of the books.

The first assignment of error is upon the action of the court in excluding the testimony of the defendant as to the condition upon which the contract was signed. This action of the court was proper. Mr. Wigmore, in his work on Evidence, at section 2435, states the rule thus:

"Where an obligation is embodied in a single document, the very essence of the obligation is its validity and enforcement. Hence an agreement, alleged to have been a part of the transaction that the obligation *should not be used as binding* or enforceable can never be permitted to be shown, for the writing necessary determines that very subject to the contrary; in the ordinary phrase, it is necessarily inconsistent with the writing."

See *Ryan v. Cooke*, 172 Ill. 302, 50 N. E. 213; *McNinch v. Northwest Thresher Co.*, 23 Okla. 386, 100 Pac. 524, 138 Am. St. Rep. 803.

It is not necessary to cite and compare the numerous conflicting authorities upon the question of admissibility of parol testimony with relation to written instruments. The authorities have gone very far in holding it competent, for the purpose of showing that the delivery of the instrument was conditional, or that it never took effect at all. 17 Cyc. 642, and cases there cited. But in all the cases sustaining this position the condition was something extraneous to the contract itself. In this case the making of the agreement is admitted, and the defendant's plea in effect is that he had a right to change his mind. Parol evidence cannot be admitted to show that a written contract was not a contract at all. A man cannot be heard to say: "To be sure, I made this written order; but I made it subject to the condition, resting in parol, that you must not act on it until I make another written order to the same effect." The law will not countenance such paltering. Defendant does not plead that the order was not to be sent in by the agent until further instructions, but that it was not to be filled until he gave another order.

Defendant claims that because the word "future" was written across the face of the contract he had the right to offer the evidence for the purpose of explaining its meaning. While the point is not decided, if he had offered evidence consistent with the contract, his position might be tenable. But the effect of his answer was that he had not become liable, and never would become liable. He did not offer to prove that the goods were to be shipped at some future date which had not yet arrived; nor did he offer to prove that the goods were to be shipped within a reasonable time in the future upon his order, and that the reasonable time had not yet elapsed. His contention was entirely inconsistent with the contract. He could not destroy the written contract under the mask of explaining a latent ambiguity.

The second contention of defendant is that plaintiff, having reserved the title to the books until they were paid for, could not

maintain an action for the price, but that its recovery should have been limited to damages for the breach of the contract to purchase. But an examination of the record shows that the defendant did not present this question in the trial court, either by a demurrer to the bill of particulars, or by an objection to the evidence, or by a request for instructions, or in the motion for a new trial. The defense claimed in the trial court, and the only one, as appears by the record, was that the contract was subject to the condition that it was not to become effective until plaintiff should correspond with defendant, and receive specific instructions to ship the books; and that if he never wanted the books shipped that they were not to be shipped at all. Having taken that position in the trial court, and having been defeated, he cannot in this court make the defense that the contract price was not the proper measure of recovery. *Herbert v. Wagg,* 27 Okla. 674, 117 Pac. 209, and authorities there cited; *Wattenbarger v. Hall,* 26 Okla. 815, 110 Pac. 911; *Harris v. First National Bank,* 21 Okla. 189, 95 Pac. 781; *Overstreet et al. v. Citizens' Bank,* 12 Okla. 383, 72 Pac. 379.

In *National Cash Register Company v. Hill,* 136 N. C. 272, 48 S. E. 637, 68 L. R. A. 100, which was a conditional sale of a cash register, the defendants claimed that it was understood between them and the agent of the company that their order was not to be sent in until confirmed by them, after they had decided what business they would engage in; and that they never confirmed the order, or instructed the agent to send it in. The jury found against them upon this issue, and upon appeal the defendants took the further ground that the contract was executory; and that they only contracted and agreed to buy the machine and did not buy it; and that, as the order was countermanded before the machine was made, the plaintiff should not have completed it, but should have sued for damages for breach of contract. The court said:

"We do not deem it necessary to discuss the question, because the defendants have not, either by their answer or by the issues tendered, presented it. The answer is based upon the contention that the order was conditional, and that the condition had never

been performed. This is very different from the contention that, although a binding order was given, it was, without legal excuse, countermanded; thus admitting a right of action in the plaintiff, but denying its right to recover the contract price. The issues tendered by the defense show clearly that such was not their contention."

It follows that the judgment of the county court should be affirmed.

By the Court: It is so ordered.

All the Justices concur.